818 A.2d 357

MICHELLE VENDETTI, PLAINTIFF, v.
RICHARD MELTZ, DEFENDANT.

Superior Court of New Jersey
Chancery Division Bergen County

October 21, 2002.

*Michelle Vendetti*, Plaintiff, *pro se.*

*Damian M. Fracasso*, for Defendant.

MARTINOTTI, J.S.C.

In this domestic violence case, the court addresses the procedures applicable to a defendant's request for an immediate appeal, made pursuant to *N.J.S.A.* 2C:25–28i, from the issuance of a temporary restraining order (TRO) issued to a plaintiff under the provisions of the Prevention of Domestic Violence Act (the Act), *N.J.S.A.* 2C:25–17 to –35. This is an issue of first impression. Moreover, the procedures applicable to these appeals are not covered by *R.* 5:7A; vary from vicinage to vicinage; and are not delineated in the Act.

This opinion memorializes and supplements the court's oral opinion delivered on October 21, 2002. The factual and procedural

history relevant to resolution of this issue follows. Plaintiff, Michelle Vendetti, and defendant, Richard Meltz, formed an intimate relationship which lasted for approximately four years. On October 17, 2002, through the Lyndhurst Municipal Court, plaintiff filed a complaint against defendant under the Act, alleging that he had committed acts of domestic violence against her on October 7, 2002. After considering the allegations contained in plaintiff's complaint, a municipal court judge issued a TRO, pursuant to *N.J.S.A.* 2C:25–28f, authorizing "an ex parte order when necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought[,]" and *N.J.S.A.* 2C:25–28g, where "it appears that the plaintiff is in danger of domestic violence[.]"

In her complaint, plaintiff alleged that on October 7, 2002, she and defendant were at a hotel in Lyndhurst and defendant tied her up with his tie and attempted to smother her with a pillow. Plaintiff did not report the incident to the Lyndhurst Police until October 17, 2002, at approximately 1:30 a.m. Upon reporting the incident, plaintiff filed a domestic violence complaint, sought, and was granted the TRO, which scheduled a final hearing in the Family Part for October 24, 2002.

Later in the day on October 17, 2002, defendant requested an immediate appeal from the TRO in accordance with the provisions of *N.J.S.A.* 2C:25–28i, which provides, in pertinent part:

i. An order for emergency, ex parte relief shall be granted upon good cause and shall remain in effect until a judge of the Family Part issues a further order. *Any temporary order hereunder is immediately appealable for a plenary hearing de novo not on the record before any judge of the Family Part* of the county in which the plaintiff resides or is sheltered if that judge issued the temporary order and sets forth in the record the reasons for modification or dissolution.... [Emphasis added.]

Upon receipt of defendant's request for an immediate appeal from issuance of the TRO, the Domestic Violence Unit of the Family Part scheduled a hearing for October 18, 2002. Plaintiff was personally notified of the appeal by the Lyndhurst Police Department. However, on the morning of October 18, 2002, plaintiff telephoned the court and advised she was unable to appear because she was ill.

Defendant appeared on October 18, 2002. The court declined to consider defendant's immediate appeal. The court contacted plaintiff, who again contended she was ill and unable to attend the hearing. Defendant's appeal was rescheduled to be heard on October 21, 2002 and plaintiff was verbally so advised. An amended TRO was entered that stated, in relevant part:

Defendant's appeal of TRO shall be heard Monday, October 21, 2002. Plaintiff reached by phone by Court staff and Judge ... confirmed illness but stated she could appear Monday, 1:30 p.m. for the appeal hearing. TRO remains in effect.

On October 21, 2002, defendant and his counsel appeared in the Family Part, as scheduled. Plaintiff did not appear. Defendant sought dismissal of the complaint and vacation of the TRO. For purposes of the appeal, the court assumed all facts pled in plaintiff's domestic violence complaint were accurate and permitted the defendant to present evidence and testimony concerning the allegations and his defenses thereto.

Defendant testified that the TRO was made in retaliation to his ending their relationship. Defendant contended the allegations in plaintiff's complaint were untrue, and that he had witnesses to verify he was at a different location at the time and place of the alleged incident. Although defendant admitted to being with plaintiff on October 7, 2002 at the hotel, he stated it was at approximately 2:30 p.m., not at 9:00 a.m. as alleged in the complaint.

After considering defendant's testimony, the court declined to vacate the TRO or dismiss the complaint, even in light of plaintiff's failure to appear, concluding that plaintiff had not been notified that the appeal would, in essence, be converted into a final hearing where the merits of the allegations in the complaint would be tested. Accordingly, plaintiff was not fully aware of the consequences of non-appearance, and to entertain an application for dismissal without affording plaintiff the opportunity to be heard, present testimony and evidence, and to cross-examine defendant would deprive plaintiff of due process and the protec-

tions contemplated by the Act for a victim demonstrating a *prima facie* case of domestic violence.

As noted, *N.J.S.A.* 2C:25–28i and *R.* 5:7A provide little guidance in determining the appropriate procedures to be employed by the Family Part when a defendant requests an immediate appeal. The *Domestic Violence Procedures Manual,* adopted jointly by the Supreme Court and Attorney General in October 1991, and revised most recently on November 23, 1998, sets forth guidelines for court procedures in the processing and hearing of domestic violence complaints. Section II(B)(2)(c), entitled "Appeals of *Ex Parte* Orders", parallels the language of the statute, but adds a due process requirement that notice of the appeal be provided to the victim. [For a discussion on due process see generally *J.F. v. B.K.* 308 *N.J.Super.* 387, 706 *A.*2d 203 (App.Div.1998) ]

The Prevention of Domestic Violence Act was enacted by the Legislature and signed into law by the Governor on January 9, 1982, effective April 9, 1982. *L.*1981, *c.* 426 (codified as *N.J.S.A.* 2C:25–1 to –16). *N.J.S.A.* 2C:25–14c, the predecessor to *N.J.S.A.* 2C:25–28i, provided:

> c. An order for emergency relief shall be granted upon good cause shown and shall remain in effect for 72 hours, which may be extended but not for more than 7 days. *Any order hereunder may be dissolved or modified on 24 hours' notice or immediately appealable for a plenary hearing de novo not on the record* before the Superior Court, Chancery Division or other juvenile and domestic relations court of the county in which the plaintiff resides. [Emphasis added.]

The emphasized language pertaining to immediate appeals was retained in the act when it was re-enacted as the "Prevention of Domestic Violence Act of 1991" by *L.*1991, *c.* 261, effective November 12, 1991, which repealed *N.J.S.A.* 2C:25–1 to –16, and was codified as *N.J.S.A.* 2C:25–17 to –33. *N.J.S.A.* 2C:25–28i was amended to its present form by *L.*1994, *c.,* § 4, effective August 11, 1994.

*N.J.S.A.* 2C:25–28i appears to permit the court to consider, at the appeal, "modification or dissolution" of the TRO. The forms of relief available when a court determines that the plaintiff has presented a *prima facie* case and is in danger of domestic violence

is expansive and is designed to provide the maximum protection available to the victim under the law. *Cesare v. Cesare,* 154 *N.J.* 394, 399, 713 *A.*2d 390 (1998); *N.J.S.A.* 2C:25–18; *see also N.J.S.A.* 2C:25–28f, –28g, –28j, –28k; *N.J.S.A.* 2C:25–29b(1) to— 29b(18) (enumerating the varied and expansive relief available upon issuance of a TRO). The statutory availability of an appeal appears to be designed to balance the fact that TROs are most often issued *ex parte,* without notice to the defendant, with the fundamental procedural due process rights of all litigants, particularly in light of the consequential relief most often granted in a TRO.

Requests by defendants for an appeal hearing often are directed at one or more of the specific forms of relief granted in the TRO. For example, where the parties have children, often the TRO vests temporary custody of the children · with the plaintiff and restricts or prohibits parenting time for the defendant. Under such circumstances, the defendant may seek immediate modification of that provision of the TRO to permit access to the children. Another example is where the TRO removes and restrains the defendant from his or her residence. There, the emergency relief sought might be access to clothing or personal or business-related effects. Occasionally, the restraints contained in a TRO may have a deleterious effect on the defendant's ability to conduct his or her employment or a business, necessitating emergent relief.

However, there are times a defendant disputes the very occurrence of the alleged act of domestic violence that underpins the issuance of the TRO. Under such circumstances, the defendant often seeks vacation of the TRO or at least significant modification of the restraints contained therein. The provisions of *N.J.S.A.* 2C:25–28i permit the court to consider that requested relief. However, the plaintiff must be made fully aware, in the notice of the appeal, of the specific nature of the relief being sought by the defendant at that hearing. This is such for several reasons, namely, 1) the underlying purposes of the Act, 2) a court has already determined that plaintiff has presented a *prima facie* case

of domestic violence, 3) there was good cause for issuance of the TRO because the plaintiff is in danger of domestic violence, *N.J.S.A.* 2C:25–28g, and 4) the TRO is necessary to "protect the life, health or well-being of a victim" *N.J.S.A.* 2C:25–28f.

█ Courts should be reluctant to vacate a TRO at an appeal hearing when concern remains for the safety of the plaintiff, where plaintiff seeks legal counsel at the hearing, where witnesses and evidence are unavailable on such short notice, where plaintiff cannot appear for a legitimate reason, such as illness, or where other circumstances exist that dictate a cautious approach. It is often prudent to consider and determine all reasonably appropriate relief requested, and defer the ultimate decision on the issue of the commission by defendant of acts of domestic violence to the final hearing. Additionally, if warranted, nothing prohibits the court from determining at the appeal hearing to accelerate the scheduled final hearing if the interests of justice dictate. Certainly, both parties may consent to converting an appeal hearing into a final hearing, as long as both parties are fully aware of the consequences and ramifications of doing so.

█ In sum, this court concludes that upon receiving a request by a defendant for an immediate appeal hearing, plaintiff must be given reasonable advance notice and that notice must specify the type of relief that defendant will be seeking at that hearing. The appeal hearing should then be limited to issues encompassed by the requested relief, and the considerations discussed herein be followed.

Here, plaintiff was not given notice that the TRO could be vacated. Accordingly, the court declined to grant emergency relief and carried the matter to the scheduled final hearing date.*

---

\* The Plaintiff did not appear at the final hearing and the case was dismissed.